**Elizabeth J. LENHARDT, lawful successor and Personal Representative of the Estate of Peter Lenhardt, III, deceased, Appellant,**

**v.**

**BASIC INSTITUTE OF TECHNOLOGY, INC., a corporation, Defendant,**

**James A. Zoeller, an individual, Appellee.**

**No. 94–3149.**

United States Court of Appeals, Eighth Circuit.

Submitted April 10, 1995.

Decided May 16, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied July 6, 1995.

Donald G. Wilkerson, St. Louis, MO, argued (H. Kent Munson, on the brief), for appellant.

Robert A. Kaiser, St. Louis, MO, argued (Daniel K. O'Toole on the brief), for appellee.

Before FAGG, Circuit Judge, HENLEY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

BOWMAN, Circuit Judge.

The sole question presented by this appeal is whether James A. Zoeller is an employer within the meaning of the Missouri Human Rights Act (MHRA). The MHRA imposes liability only on employers for proscribed acts of discrimination in the workplace. The District Court[1] held that Zoeller was not an employer and granted his motion for summary judgment. The plaintiff, Peter Lenhardt III, timely filed his notice of appeal with the District Court. As a result of Lenhardt's subsequent death, Elizabeth J. Lenhardt has been substituted as the appellant in this case in her capacity as lawful successor and personal representative of Peter Lenhardt III. We agree that Zoeller was not Lenhardt's employer within the meaning of the MHRA and thus we affirm the District Court.

While this case does not turn on an issue of fact, to place the controversy in context we briefly summarize the salient facts as set out in Lenhardt's brief. Lenhardt was employed by the Basic Institute of Technology, Inc.

---

1. The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri.

(BITI), in St. Louis, serving as BITI's admissions director. During Lenhardt's employment, Zoeller was the president, sole director, and sole shareholder of BITI. Lenhardt was diagnosed with cancer of the cheek in January 1992. He subsequently had surgery and was then scheduled for six weeks of radiation treatment. Lenhardt planned to work during the radiation treatment, but BITI required him to take a leave of absence until the treatment was completed. During Lenhardt's radiation treatment, BITI terminated his employment. BITI did not inform Lenhardt of its decision until he reported for work at the end of the treatment in April 1992.

Lenhardt filed a two-count complaint against BITI and Zoeller in the District Court. In Count I Lenhardt alleged that BITI and Zoeller had violated the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1140 (1988), because the termination of Lenhardt's employment was motivated by a desire to "deprive Plaintiff of continued participation in BITI's group health insurance benefit coverage and discriminate against Plaintiff for exercising his [ERISA] rights...." Complaint at 3–4. In Count II, a supplemental state law claim, see 28 U.S.C. § 1367 (Supp. V 1993), Lenhardt alleged that BITI and Zoeller had violated the MHRA, Mo.Rev.Stat. Ch. 213 (1994), because their decision to terminate Lenhardt's employment was motivated by Lenhardt's disability or handicap. Zoeller moved for summary judgment on Count II prior to trial, arguing that he could not be held liable in his individual capacity because he was not Lenhardt's employer within the meaning of the MHRA. The District Court granted the motion and dismissed Count II as to Zoeller. Count I was tried to the court against both defendants, and Count II was tried to a jury against BITI only. The jury returned a verdict in favor of Lenhardt on Count II in the amount of $60,000, and the court entered judgment against BITI on that verdict. On Count I, the court then found in favor of the defendants and entered judgment for BITI and Zoeller. Lenhardt appeals only the District Court's order granting summary judgment in favor of Zoeller on Count II. BITI has not appealed the final judgment entered against it in accordance with the jury verdict on Count II.

■■■ We review *de novo* a district court's grant of summary judgment. *See Maitland v. University of Minnesota,* 43 F.3d 357, 360 (8th Cir.1994). Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c). With respect to Zoeller's summary judgment motion, there were no relevant factual disputes, and the District Court determined, based on its reading of the MHRA, that Zoeller was entitled to judgment as a matter of law. We review *de novo* a district court's interpretation of state law, giving no deference to that interpretation. *Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

■■ Zoeller is entitled to judgment as a matter of law unless he was, along with BITI, an "employer" of Lenhardt for purposes of the MHRA. The MHRA defines an employer as follows:

> "Employer" includes the state, or any political subdivision thereof, or any person employing six or more persons within the state, and any person directly acting in the interest of an employer, but does not include corporations and associations owned and operated by religious or sectarian groups.

Mo.Rev.Stat. § 213.010(6) (1994). To date, the Missouri Supreme Court has not decided whether individual officers or other employees of a corporate employer can be held liable as employers under the MHRA. When a state's highest court has not addressed the precise question of state law that is at issue, a federal court must decide "what the highest state court would probably hold were it called upon to decide the issue." *Hazen v. Pasley,* 768 F.2d 226, 228 (8th Cir.1985). The Missouri Supreme Court has considered analogous provisions in federal civil rights laws when interpreting the MHRA, *Midstate Oil Co. v. Missouri Comm'n on Human Rights,* 679 S.W.2d 842,

845–46 (Mo.1984) (en banc), and we have observed that "federal employment discrimination decisions [are] 'applicable and authoritative under the MHRA.'" *Tart v. Hill Behan Lumber Co.,* 31 F.3d 668, 671 (8th Cir. 1994) (quoting *Lane v. Ground Round, Inc.,* 775 F.Supp. 1219, 1223 (E.D.Mo.1991)). We see no reason to believe that the Missouri Supreme Court would not take analogous federal employment discrimination decisions into account if it were called upon to decide the issue that confronts us in the present case. Accordingly, in predicting what that court probably would decide on this issue, we will seek to construe the MHRA's definition of "employer" in a manner consistent with analogous federal decisions construing federal employment discrimination laws.

Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act (ADEA), and the MHRA are similar statutory schemes that prohibit discrimination in employment against protected classes. Both federal statutes include definitions of an employer that are analogous to the MHRA's definition of the term. Title VII, for example, defines an employer as follows:

> a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person....

42 U.S.C. § 2000e(b) (1988); *see also* 29 U.S.C. § 630(b) (1988) (ADEA) (defining employer in substantially identical manner). This language is analogous, though not identical, to the language previously adopted by the Missouri legislature that is now codified in § 213.010(6). Lenhardt contends that the two definitions are not analogous because, he asserts, an individual need not be an agent under the Missouri statute in order to fall within the definition of an employer. We are not persuaded. Lenhardt's assertion regarding the Missouri statute may or may not be true; it is not self-evident from the language of § 213.010(6), and Lenhardt has not called our attention to any authority directly in point. In any event, the distinction Lenhardt would have us draw is a distinction without a difference in the context of this case. If the words "any agent of such a person" and "any person directly acting in the interest of an employer" subjected corporate supervisory personnel to individual liability, Zoeller would come within either definition of an employer. We therefore reject Lenhardt's argument that the two definitions are not analogous to one another.

This Court has not decided the question of individual employee liability under Title VII when the employee is the Title VII plaintiff's supervisor, and we do not do so today. We have held, however, that a Title VII plaintiff could not hold co-workers liable in their individual capacities under Title VII even though such co-workers might be considered agents of their employer. *See Smith v. St. Bernards Regional Medical Center,* 19 F.3d 1254, 1255 (8th Cir.1994). Additionally, four other circuits have considered the question of a supervisor's individual liability and uniformly have held that an employee-supervisor cannot be sued in his or her individual capacity under the statute. *See Birkbeck v. Marvel Lighting Co.,* 30 F.3d 507, 510–11 (4th Cir.) (interpreting ADEA definition of employer), *cert. denied,* ⸺ U.S. ⸺, 115 S.Ct. 666, 130 L.Ed.2d 600 (1994); *Lankford v. City of Hobart,* 27 F.3d 477, 480 (10th Cir.1994); *Grant v. Lone Star Co.,* 21 F.3d 649, 653 (5th Cir.), *cert. denied,* ⸺ U.S. ⸺, 115 S.Ct. 574 (1994); *Miller v. Maxwell's Int'l Inc.,* 991 F.2d 583, 587 (9th Cir. 1993), *cert. denied,* ⸺ U.S. ⸺, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994). The consensus of these courts is that Title VII actions brought against individual employees are against those employees in their "official" capacities, and that liability can be imposed only upon the common employer of the plaintiff and of the individual fellow employees who are named as defendants. Under this view, the language "any agent of such a person" is designed to incorporate the principles of *respondeat superior* into Title VII rather than to expose either supervisors or co-workers to personal liability in employment discrimination cases. *See, e.g., Miller,* 991 F.2d at 587.

Lenhardt argues that the cases holding that a supervisor or other employee cannot be sued in his or her individual capacity

under Title VII are incorrectly decided. He relies, however, on earlier cases from the Fourth, Fifth, and Tenth Circuits. Appellant's Brief at 8–10 (citing *Sauers v. Salt Lake County*, 1 F.3d 1122, 1125 (10th Cir. 1993); *Paroline v. Unisys Corp.*, 879 F.2d 100, 104 (4th Cir.1989), *vacated in part*, 900 F.2d 27 (4th Cir.1990); *Hamilton v. Rodgers*, 791 F.2d 439, 442–43 (5th Cir.1986)). Whatever the law in these jurisdictions may have been at one time, the more recent cases reflect a clear consensus on the issue before us: supervisors and other employees cannot be held liable under Title VII in their individual capacities. *See Birkbeck*, 30 F.3d at 510–11; *Lankford*, 27 F.3d at 480; *Lone Star Co.*, 21 F.3d at 653. The sole remaining court of appeals precedent Lenhardt cites in support of his argument is *York v. Tennessee Crushed Stone Ass'n*, 684 F.2d 360, 362 (6th Cir.1982) (discussing employee-supervisor individual liability under Title VII and ADEA). Lenhardt acknowledges, and we agree, that the *York* court's analysis of an employee's individual liability is dictum. Appellant's Brief at 10. Furthermore, a cursory look at *York* reveals that the court there concluded, in contradistinction to Lenhardt's argument in this case, that the Title VII cases it had analyzed "simply stand for the proposition that [an employee] could be sued in his official capacity...." *York*, 684 F.2d at 362.

Lenhardt, in a final attempt to convince us that our sister circuits have all erred, advances the following "chamber of horrors" argument:

It defies logic that an individual ... with complete control over an employment situation could not be held liable in his individual capacity. To so hold would give such employees a "free pass" to act in a discriminatory manner with impunity because those employees would know that under no circumstances could they be held liable for their actions under Title VII.

Appellant's Brief at 13. We are not persuaded. As a practical matter employees who unlawfully discriminate against their fellow employees, and who thereby expose their employer to liability, do not get anything like a "free pass" to continue their wrongdoing with impunity. By incorporating the principles of *respondeat superior* into Title VII, Congress has required employers to answer for prohibited acts of discrimination perpetrated by their employees. An employer who is subjected to well-founded claims of employment discrimination as a result of an employee's intentional acts of discrimination is not likely to look favorably upon the offending employee. To the contrary, the employer, to protect its own interests and to avoid further liability, almost certainly will impose some form of discipline upon the offending employee. That discipline may include a "free pass" to the unemployment line, a result that would seem particularly likely if the employee engages in repeated acts of intentional discrimination against fellow employees. The scheme that our sister circuits have concluded Congress adopted in Title VII, with liability for unlawful discrimination in the workplace imposed only on the employing entity, is not illogical nor does it result in the "free pass" described by Lenhardt.

■ Looking to analogous federal civil rights statutes, as we believe the Missouri Supreme Court would, we hold that the Missouri Supreme Court would interpret the definition of an employer in the MHRA, Mo. Rev.Stat. § 213.010(6), in a manner consistent with decisions of our sister circuits construing Title VII's definition of an employer. Every circuit that has considered the issue ultimately has concluded that an employee, even one possessing supervisory authority, is not an employer upon whom liability can be imposed under Title VII. Thus, we believe the Missouri Supreme Court would hold that the definition of the term employer in the MHRA does not subject employees, including supervisors or managers, to individual liability. We therefore hold that Zoeller was not Lenhardt's employer within the meaning of the MHRA and, accordingly, that the District Court correctly ruled as a matter of law that Lenhardt could not maintain an action against Zoeller under the MHRA.

For the foregoing reasons, the order of the District Court granting Zoeller's motion for summary judgment is affirmed.