[No. B092333. Second Dist., Div. Two. June 5, 1996.]

JACK ARTHUR JANKEN et al., Plaintiffs and Appellants, v.
GM HUGHES ELECTRONICS et al., Defendants and Respondents.

56

## COUNSEL

Love & Bosserman, Beth A. Shenfeld and John M. Kennedy for Plaintiffs and Appellants.

Paul, Hastings, Janofsky & Walker, J. Al Latham, Jr., George W. Abele, Alpa Patel Chernof and Robert F. Walker for Defendants and Respondents.

## OPINION

**ZEBROWSKI, J.**—In *Caldwell* v. *Montoya* (1995) 10 Cal.4th 972 [42 Cal.Rptr.2d 842, 897 P.2d 1320], the Supreme Court considered whether individual members of a public school board placed themselves at risk of personal liability on claims of the FEHA[1] discrimination when they voted to terminate the school district's superintendent. The *Caldwell* court found that statutory immunities protect public sector employees from personal liability on claims such as FEHA discrimination. Since *Caldwell* was decided on the immunity issue, the *Caldwell* court found it unnecessary to decide the "broad and difficult" preliminary question of whether the FEHA exposes individual supervisory employees to the risk of personal liability for discrimination whenever they make a personnel decision. We now confront that question.[2]

The question is one of legislative intent. (See, e.g., *California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170

---

[1] The California Fair Employment and Housing Act (FEHA), Government Code section 12900 et seq., prohibits various forms of discrimination, including age and race discrimination. In *Caldwell* the claims were age and race discrimination. (10 Cal.4th 972, 976.) All further statutory references are to Government Code unless otherwise indicated.

[2] See footnote 3 of *Caldwell* v. *Montoya, supra,* 10 Cal.4th 972, 978. As the Supreme Court there noted: ". . . no prior published California decision has directly considered whether FEHA imposes personal liability on an individual employee or manager who causes or assists a covered 'employer' to violate the statute's prohibitions against discriminatory hiring, firing,

Cal.Rptr. 817, 621 P.2d 856] [fundamental rule of statutory construction is to ascertain the intent of the Legislature].) Plaintiffs contend that the Legislature intended to place every individual supervisory employee in California at risk of personal liability for employment discrimination every time that supervisory employee makes a personnel decision.[3] Defendants contend that the Legislature intended to authorize lawsuits for employment discrimination against employers only—and not against individual supervisory employees.

██ The primary determinant of legislative intent is the words used by the Legislature. (See, e.g., *California Teachers Assn.* v. *San Diego Community College Dist., supra,* 28 Cal.3d 692, 698.) However, legislative intent is the dominant consideration; a literal reading resulting in unintended consequences does not control over intent. (See, e.g., *Whitman* v. *Superior Court* (1991) 54 Cal.3d 1063, 1072 [2 Cal.Rptr.2d 160, 820 P.2d 262] [settled principle that " ' "statute should not be given a literal meaning if doing so would result in absurd consequences the Legislature did not intend" ' "].) Hence both the wording of the statute and the consequences of differing possible constructions must be evaluated in order to determine and effectuate legislative intent.

In the present case, these rules of statutory construction can reasonably lead to differing conclusions, and the "broad and difficult question" presented here has consequently generated considerable debate. Below we will expound our decision that the statutory language here in question was not intended to place individual supervisory employees at risk of personal liability for performing the job of making personnel decisions. This decision places us in accord with the growing consensus of courts from around the country which have considered similar language in similar statutes. Our conclusion is based on the wording of the statute, the fundamental distinction between discrimination and harassment, the avoidability of the type of

---

and personnel practices." (*Id.* at p. 978.) The Court of Appeal in *Caldwell* had ruled in an unpublished decision that the school board members were all at risk of personal liability under the FEHA for their votes.

[3]The bases for discrimination liability are many. In addition to age discrimination, the FEHA prohibits discrimination on account of "race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, or sex." (§§ 12940, subd. (a), 12941.) This broad range includes such conditions as learning disabilities, cancer, pregnancy and childbirth, and religious belief or observance. (§ 12926, subds. (h), (i), (n), and (o).) It has been held to encompass such far-ranging categories as childbearing capacity (*Johnson Controls, Inc.* v. *Fair Employment & Housing Com.* (1990) 218 Cal.App.3d 517 [267 Cal.Rptr. 158]); high blood pressure (*American National Ins. Co.* v. *Fair Employment & Housing Com.* (1982) 32 Cal.3d 603 [186 Cal.Rptr. 345, 651 P.2d 1151]); and religious belief that it would be a sin to participate in the construction of a nuclear generating station (*Best* v. *California Apprenticeship Council* (1984) 161 Cal.App.3d 626 [207 Cal.Rptr. 863]).

conduct that can lead to a harassment claim contrasted with the unavoidability of the type of personnel management decision that can lead to a discrimination claim, the prospective rather than retrospective nature of personnel management, the differing statutory treatment of discrimination and harassment, and the reasoning of similar cases.

Part I of this opinion sets forth the factual and procedural posture of the case. Part II sets forth the distinction between harassment and discrimination. Part III sets forth the several reasons for our decision that individual employees are not exposed to the risk of personal liability for personnel management decisions. Part IV applies the concepts developed to the facts of this case and affirms the orders of the trial court.

## I. The Factual and Procedural Posture

Defendants in the underlying action are GM Hughes Electronics and Hughes Aircraft Company (hereafter Hughes), plus three individual supervisory employees of Hughes. Plaintiffs are four former and current employees of Hughes. The plaintiffs allege that Hughes follows a policy of terminating, or forcing the resignation of, employees over the age of 40 without good cause, in violation of section 12941, subdivision (a), of the FEHA. Section 12941, subdivision (a) declares it an unlawful employment practice "for an employer to refuse to hire or employ, or to discharge, dismiss, reduce, suspend, or demote, any individual over the age of 40 on the ground of age . . . ." Plaintiffs allege that they are all over the age of 40 and that each has suffered an adverse personnel action on the prohibited basis of age. Plaintiffs further allege that the offending personnel management decisions were made by the individual defendants in the course of performance of their duties as supervisory employees of Hughes.

Plaintiffs' suit included claims against the individual supervisory employee defendants for age discrimination in violation of section 12941, subdivision (a) and for intentional infliction of emotional distress. The trial court sustained demurrers to both claims without leave to amend on the grounds, among others: a) that the FEHA does not impose personal liability on individual supervisory employees for age discrimination in making personnel management decisions, and b) that the intentional infliction of

emotional distress count simply duplicated the FEHA claim. The individual employee defendants were dismissed, and this appeal followed.[4]

## II. THE DISTINCTION BETWEEN HARASSMENT AND DISCRIMINATION

The FEHA prohibits both harassment[5] and discrimination.[6] Case law has generally found little reason to distinguish clearly between the type of allegations that support a claim of harassment versus the type of allegations that support a claim of discrimination. The Legislature, although clearly indicating an intended distinction between the two different types of conduct by treating them differently in the wording of the FEHA, has not provided any express definitions.[7] Based upon the language used by the Legislature, we conclude in part III below that it was the intent of the Legislature to place individual supervisory employees at risk of personal liability for personal conduct constituting harassment, but that it was not the intent of the Legislature to place individual supervisory employees at risk of personal liability for personnel management decisions later considered to be discriminatory. We conclude that the Legislature's differential treatment of

---

[4]The case against Hughes continued without the individual supervisory employees; the case against Hughes is not involved on this appeal. This appeal concerns only the case against the individual supervisory employees of Hughes.

[5]Section 12940, subdivision (h)(1) provides in relevant part that it is an unlawful employment practice:

"For an employer . . . or any other person, because of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, or age, to harass an employee or applicant. Harassment of an employee or applicant by an employee other than an agent or supervisor shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action."

[6]Section 12941, subdivision (a) provides in relevant part:

"It is an unlawful employment practice for an employer to refuse to hire or employ, or to discharge, dismiss, reduce, suspend, or demote, any individual over the age of 40 on the ground of age . . . ."

Section 12940, subdivision (a) provides in relevant part that it is an unlawful employment practice:

"For an employer, because of the race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, or sex of any person . . . to discriminate against the person in compensation or in terms, conditions or privileges of employment."

[7]The statutes prohibit both "an employer" and "any other person" from harassing. (§ 12940, subd. (h)(1).) Only an "employer" is prohibited from discriminating. (§§ 12940, subd. (a) and 12941, subd. (a).) For purposes of harassment only, "employer" is defined to include any person employing one or more other persons. (§ 12940, subd. (h)(3), (4) and (5).) For purposes of discrimination, "employer" is defined as any person employing five or more other persons. (§ 12926, subd. (d).)

harassment and discrimination is based on the fundamental distinction between harassment as a type of conduct not necessary to a supervisor's job performance, and business or personnel management decisions—which might later be considered discriminatory—as inherently necessary to performance of a supervisor's job. As a foundational step in our analysis, therefore, we distinguish harassment from discrimination.

Both parties present as an example of harassment California Code of Regulations, title 2, section 7287.6, subdivision (b)(1). This regulation provides that harassment includes, but is not limited to, verbal epithets or derogatory comments, physical interference with freedom of movement, derogatory posters or cartoons, and unwanted sexual advances.[8] As the regulation implies, harassment consists of a type of conduct not necessary for performance of a supervisory job. Instead, harassment consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives. Harassment is not conduct of a type necessary for management of the employer's business or performance of the supervisory employee's job. (Cf. *Lisa M.* v. *Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 301 [48 Cal.Rptr.2d 510, 907 P.2d 358] [sexual assault not motivated by desire to serve employer's interest]; *Farmers Ins. Group* v. *County of Santa Clara* (1995) 11 Cal.4th 992 [47 Cal.Rptr.2d 478, 906 P.2d 440] [sexual harassment by deputy sheriff not within scope of employment].)[9]"

Discrimination claims, by contrast, arise out of the performance of necessary personnel management duties. While harassment is not a type of

---

[8]California Code of Regulations, title 2, section 7287.6, subdivision (b)(1) provides:

"(1) Harassment includes but is not limited to:

"(A) Verbal harassment, e.g., epithets, derogatory comments or slurs on a basis enumerated in the Act.

"(B) Physical harassment, e.g., assault, impeding or blocking movement, or any physical interference with normal work or movement, when directed at an individual on a basis enumerated in the Act.

"(C) Visual forms of harassment, e.g., derogatory posters, cartoons, or drawings on a basis enumerated in the Act, or

"(D) Sexual favors, e.g., unwanted sexual advances which condition an employment benefit upon an exchange of sexual favors. [See also California Code of Regulations, title 2, section 7291.1, subd. (f)(1).]"

[9]Under the FEHA, an employer is generally liable to the victimized employee for harassment by a supervisor, and may also be liable under certain circumstances for harassment by a coworker. (§ 12940, subd. (h)(1).) The issue in *Farmers, supra, Ins. Group* v. *County of Santa Clara*, 11 Cal.4th 992 was whether the county was obligated to indemnify the offending deputy and his insurer, an issue which turned on whether the deputy's conduct was within the scope of his employment. *Farmers* is cited here simply for its instructive value in distinguishing harassment from discrimination.

conduct necessary to personnel management, making decisions is a type of conduct essential to personnel management. While it is possible to avoid making personnel decisions on a prohibited discriminatory basis, it is not possible either to avoid making personnel decisions or to prevent the claim that those decisions were discriminatory.[10]

Courts have employed the concept of delegable authority as a test to distinguish conduct actionable as discrimination from conduct actionable as harassment. We adopt this approach to find that the exercise of personnel management authority properly delegated by an employer to a supervisory employee might result in discrimination, but not in harassment. (See *Birkbeck* v. *Marvel Lighting Corp.* (4th Cir. 1994) 30 F.3d 507, 510 and fn. 1 [distinguishing "personnel decisions of a plainly delegable character" from harassment]; and *Stephens* v. *Kay Management Co., Inc.* (E.D.Va. 1995) 907 F.Supp. 169, 171, 173 [no personal liability of individual supervisors for "employment-related decisions" or " 'personnel decisions of a plainly delegable character' "].) Making a personnel decision is conduct of a type fundamentally different from the type of conduct that constitutes harassment. Harassment claims are based on a type of conduct that is avoidable and unnecessary to job performance. No supervisory employee needs to use slurs or derogatory drawings, to physically interfere with freedom of movement, to engage in unwanted sexual advances, etc. in order to carry out the legitimate objectives of personnel management. Every supervisory employee can insulate himself or herself from claims of harassment by refraining from such conduct.[11] An individual supervisory employee cannot, however, refrain from engaging in the type of conduct which could later give rise to a discrimination claim. Making personnel decisions is an inherent and unavoidable part of the supervisory function. Without making personnel decisions, a supervisory employee simply cannot perform his or her job duties.

■ We conclude, therefore, that the Legislature intended that commonly necessary personnel management actions such as hiring and firing, job or

---

[10]Given the reach of the classes protected against discrimination under the FEHA, every employee subjected to an unwanted decision could in theory claim that the decision was motivated by a prohibited basis. Prohibited is discrimination on the basis of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status or sex (see § 12940, subd. (a)), or age over 40 (see § 12941, subd. (a)). Everyone falls into at least one of these classes. The question then becomes simply whether the trier of fact will decide by a preponderance whether inclusion in the pertinent class was the motivation for the personnel decision. The scope of potential exposure of a supervisory employee to liability is therefore broad.

[11]We do not deal here with the potential for fraudulent claims. The theoretical prospect of a fraudulent claim always exists; dealing with that potential is far beyond the scope of this opinion.

project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or nonassignment of supervisory functions, deciding who will and who will not attend meetings, deciding who will be laid off, and the like, do not come within the meaning of harassment. These are actions of a type necessary to carry out the duties of business and personnel management. These actions may retrospectively be found discriminatory if based on improper motives, but in that event the remedies provided by the FEHA are those for discrimination, not harassment. Harassment, by contrast, consists of actions outside the scope of job duties which are not of a type necessary to business and personnel management. This significant distinction underlies the differential treatment of harassment and discrimination in the FEHA.

### III. Individual Supervisory Employees Are Not at Risk of Personal Liability on Claims of Age Discrimination.

1. *The statutory provisions and plaintiffs' argument:*

 Section 12941, subdivision (a) declares it unlawful for "an employer" to discriminate on the basis of age.[12] By contrast, section 12940, subdivision (h)(1) declares it unlawful for "an employer . . . *or any other person*" to harass. (Italics added.) "Person" is defined in section 12925, subdivision (d) to include "one or more individuals." The wording of these three sections suggests that liability for harassment is broader than liability for discrimination. It appears from this language that liability for harassment, which extends to "any person" and hence extends to "individuals," encompasses individual supervisory employees. Liability for discrimination, by contrast, is limited to the "employer" only.

Plaintiffs argue against this interpretation by reference to section 12926, subdivision (d), which defines "employer" to include "any person regularly employing five or more persons, or any person acting as an agent of an employer." Plaintiffs argue that an individual supervisory employee is "acting as an agent of an employer," and hence that an individual supervisory employee is himself or herself an "employer" for purposes of statutory liability. A proper construction of section 12926, subdivision (d) and the purpose of its reference to "any person acting as an agent of an employer" is therefore a key to proper resolution of this case.

Two alternative constructions are available. One construction is that argued for by plaintiffs here: that by this language the Legislature intended

---

[12] Section 12940, subdivision (a), prohibiting discrimination because of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status or sex, also refers only to "an employer."

to define every supervisory employee in California as an "employer," and hence place each at risk of personal liability whenever he or she makes a personnel decision which could later be considered discriminatory. The other construction is the one widely accepted around the country: that by the inclusion of the "agent" language the Legislature intended only to ensure that *employers* will be held liable if their supervisory employees take actions later found discriminatory, and that *employers* cannot avoid liability by arguing that a supervisor failed to follow instructions or deviated from the employer's policy.

For the reasons which follow, we reject the contention that individual supervisory employees are at risk of personal liability for age discrimination on the theory that the "agent" language in the statute defines them as an "employer" for purposes of liability.

2. *The growing consensus that individual supervisors are not personally liable as "agents":*

Because the antidiscrimination objectives and relevant wording of title VII of the Civil Rights Act of 1964 (Title VII),[13] the Age Discrimination in Employment Act (ADEA)[14] and the Americans with Disabilities Act (ADA)[15] are similar to those of the FEHA, California courts often look to federal decisions interpreting these statutes for assistance in interpreting the FEHA. (See, e.g., *Los Angeles County Dept. of Parks & Recreation* v. *Civil Service Com.* (1992) 8 Cal.App.4th 273, 280 [10 Cal.Rptr.2d 150]; *Fisher* v. *San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 606 [262 Cal.Rptr. 842]; 8 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, § 759, pp. 255-259.)

Title VII defines employer as "a person . . . who has fifteen or more employees . . . and any agent of such a person."[16] The ADEA defines employer as "a person . . . who has twenty or more employees" including "any agent of such a person."[17] The ADA defines employer as "a person . . . who has 15 or more employees . . . and any agent of such person."[18] These three federal statutes thus contain definitions of employer identical in all relevant respects to the definition of employer contained in the FEHA: specifically, all the definitions of employer in these statutes are worded to cover the "agent" of the employer.

---

[13]Title 42 United States Code section 2000e et seq.
[14]Title 29 United States Code section 621 et seq.
[15]Title 42 United States Code section 12111 et seq.
[16]Title 42 United States Code section 2000e(b).
[17]Title 29 United States Code section 630(b).
[18]Title 42 United States Code section 12111(5)(A).

The "clear and growing consensus" of courts which have considered the effect of such "agent" language in the definition of employer is that this language was intended only to ensure that employers would be held liable for discrimination by their supervisory employees. These courts have found that the "agent" language was not intended to expose individual, nonemployer, supervisory employees to personal liability on discrimination claims. (See, e.g., *Stephens* v. *Kay Management Co., Inc.*, *supra*, 907 F.Supp. 169, 173 [noting that argument that "agent" language renders individual supervisory employees personally liable "is at odds with more recent decisions which reflect a clear and growing consensus" that individuals are not personally liable].)

Within the past three years, six federal circuits have concluded either (1) that the "agent" language does not create individual liability for either discrimination or harassment, or (2) that the "agent" language does not create individual liability for discrimination (while possibly allowing individual liability for harassment). A seventh circuit has found that while individuals can be sued in their official or representative capacity, they cannot be sued in their individual capacity and have no personal liability. An eighth circuit has construed similar language in the Missouri Human Rights Law, finding that it does not create individual liability. These cases are discussed next below. Since, as we will set forth in part IV below, the claims raised in the instant case are all discrimination (not harassment) claims, the divergence among the federal courts of appeals as to individual liability for harassment is immaterial for present purposes.[19]

*Tomka* v. *Seiler Corp.* (2d Cir. 1995) 66 F.3d 1295, 1313-1314 was a Title VII case. In *Tomka*, the Second Circuit rejected "a narrow, literal reading of the agent clause" which implied "that an employer's agent is a statutory employer for purposes of liability." Instead, on "a broader consideration" of the purposes of Title VII, *Tomka* found that the "agent" language was intended as a simple expression of respondeat superior liability. (66 F.3d 1295, 1314.)

*Birkbeck* v. *Marvel Lighting Corp.*, *supra*, [(4th Cir. 1994)] 30 F.3d 507 was an ADEA case. In *Birkbeck*, the Fourth Circuit noted that "[t]he few courts that have found individual liability under the ADEA tend to seize on the use of the word 'agent' " in the definition of employer. *Birkbeck* found

---

[19]In California, section 12940, subdivision (h)(1) makes not only an "employer," but also "any other person" liable for harassment. Hence the question of individual liability for harassment seems clearly answered in California. (See also *Page* v. *Superior Court* (1995) 31 Cal.App.4th 1206 [37 Cal.Rptr.2d 529]; and *Matthews* v. *Superior Court* (1995) 34 Cal.App.4th 598 [40 Cal.Rptr.2d 350].)

that rationale "unpersuasive," finding instead that the "agent" reference was "an unremarkable expression of respondeat superior—that discriminatory personnel actions taken by an employer's agent may create liability for the employer." (30 F.3d 507, 510.)

*Grant* v. *Lone Star Co.* (5th Cir. 1994) 21 F.3d 649, 651-653 was a Title VII case. In *Grant*, the Fifth Circuit stated that neither public nor private sector employees are subject to individual liability on the basis of the "agent" language, instead agreeing that the purpose of the "agent" provision was to incorporate respondeat superior liability into Title VII. (See also *Harvey* v. *Blake* (5th Cir. 1990) 913 F.2d 226, 227-228 [public officials may be liable in their official capacities, but not in their individual capacities].)

*U.S. E.E.O.C.* v. *AIC Security Investigations, Ltd.* (7th Cir. 1995) 55 F.3d 1276 was an ADA case. In *U.S. E.E.O.C.*, the Seventh Circuit joined "analogous decisions of our sister Circuits in holding that individuals who do not independently meet the ADA's definition of 'employer' cannot be held liable under the ADA." (55 F.3d 1276, 1279.) The Seventh Circuit stated that the EEOC was "fighting against the weight of authority" in urging individual liability on the basis of the "agent" wording in the employer definition. While finding the EEOC's " 'plain language' " argument to have "surface appeal," the Seventh Circuit found "upon closer examination that appeal is really an illusion." (55 F.3d 1276, 1281.) The court ruled that the reason for the inclusion of the "agent" language in the definition of employer "was to ensure that the courts would impose *respondeat superior* liability upon employers for the acts of their agents. [Citations.]" *(55 F.3d 1276, 1281, original italics.)

*Miller* v. *Maxwell's Intern. Inc.* (9th Cir. 1993) 991 F.2d 583 was a Title VII and ADEA case. In *Miller*, the Ninth Circuit noted that, because of the use of the word "agent" in the definition of employer, "some courts have reasoned that supervisory personnel . . . are themselves employers for purposes of liability." (*Miller, supra*, 991 F.2d 583, 587.) Although the Ninth Circuit found that this statutory construction argument was "not without merit," the court found the "better rule" to be that the purpose of the agent provision was to incorporate respondeat superior liability into the statute. (991 F.2d 583, 587.)[20]

*Sauers* v. *Salt Lake County* (10th Cir. 1993) 1 F.3d 1122 was a Title VII case. In *Sauers* the Tenth Circuit found that a supervisor with significant

[20]The Ninth Circuit also considered itself bound by prior authority that individual non-employers could not be held liable for back pay. (*Miller* v. *Maxwell's Intern. Inc., supra*, 991 F.2d 583, 587.)

control over hiring, firing or conditions of employment acts as an "agent" of the employer, and that the employer is therefore liable for a hostile work environment created by the supervisor whether or not the employer knew of the supervisor's conduct. (1 F.3d 1122, 1125.) The supervisor himself, however, was not the employer and could be sued only in his official, and not in his individual, capacity. The "agent" language in the definition of employer did not render the individual liable. (But see *Brownlee* v. *Lear Siegler Management Services Corp.* (10th Cir. 1994) 15 F.3d 976, 978 [suggesting individual liability under Title VII in dictum].)

The Eleventh Circuit has ruled that individual supervisory employees cannot be held personally liable under either Title VII or the ADEA, because they are not employers. Instead, the individual nonemployers may be sued in their official or agency capacity only. (*Cross* v. *State of Ala.* (11th Cir. 1995) 49 F.3d 1490,1504 [individuals may be sued under Title VII in their official capacities only]; *Smith* v. *Lomax* (11th Cir. 1995) 45 F.3d 402, 403, fn. 4 [under Title VII and the ADEA, individual supervisors are not employers and cannot be held personally liable]; *Busby* v. *City of Orlando* (11th Cir. 1991) 931 F.2d 764, 772 [supervisory employees may be named in their agency capacity, but are not personally liable].)

The Eighth Circuit, in *Lenhardt* v. *Basic Institute of Technology, Inc.* (8th Cir. 1995) 55 F.3d 377, construed the definition of employer in the Missouri Human Rights Act (MHRA). Employer was there defined to include " '. . . any person directly acting in the interest of an employer . . . .' " (55 F.3d 377, 379.) The Eighth Circuit saw "no reason to believe that the Missouri Supreme Court would not take analogous federal employment discrimination decisions into account if it were called upon to decide the issue" of whether individual supervisors can be held liable on the theory that they are included in the definition of employer. (55 F.3d 377, 380.) The Eighth Circuit thus sought "to construe the MHRA's definition of 'employer' in a manner consistent with analogous federal decisions construing federal employment discrimination laws." (55 F.3d 377, 380.) The Eighth Circuit reviewed the "agent" language in the definition of employer in Title VII and the ADEA and found it analogous to the MHRA definition. Reviewing federal law, the Eighth Circuit found a "clear consensus" that supervisors cannot be held liable in their individual capacity, and that instead supervisors could be named only in their "official" capacities, finding that "[e]very circuit that has considered the issue ultimately has concluded that an employee, even

one possessing supervisory authority, is not an employer upon whom liability can be imposed under Title VII." (55 F.3d 377, 381.)[21]

In *Jones* v. *Los Angeles Community College Dist.* (1988) 198 Cal.App.3d 794, 813 [244 Cal.Rptr. 37], the court reversed a summary judgment in favor of individual supervisory employees on a discrimination claim on the grounds of lack of a showing that individuals could not be held liable, and in *Matthews* v. *Superior Court, supra,* 34 Cal.App.4th 598, 604, the court noted the opinion of the Fair Employment and Housing Commission that individual employees could be held liable for discrimination. *Caldwell* v. *Montoya, supra,* 10 Cal.4th 972, decided several months after *Matthews* and several years after *Jones,* noted that "no prior published California decision has directly considered whether FEHA imposes personal liability on an individual employee or manager" for discrimination. (10 Cal.4th 972, 978, fn. 3.) The Supreme Court hence did not consider either *Jones* or *Matthews* as deciding the issue that now concerns us, and for obvious reasons. *Jones* involved simply a finding that a summary judgment had not been adequately supported. *Matthews* was a harassment case, hence *Matthews* made no rulings concerning discrimination and any observations in *Matthews* about discrimination were dicta.

The argument has been suggested that the "agent" language in the employer definition must have been intended to accomplish more than the imposition of respondeat superior liability for discrimination on the theory that the employer's liability for the supervisory employee's discrimination is an obvious and foregone conclusion. Not necessarily so. Without the "agent" language, it is by no means a foregone conclusion that employers would uniformly be held liable for all prohibited discriminatory acts by their supervisory employees. See, e.g., the analysis of the scope of respondeat superior liability in *Farmers Ins. Group* v. *County of Santa Clara, supra,* 11 Cal.4th 992, and the discussion of the purpose of the "agent" language in *Meritor Savings Bank* v. *Vinson* (1986) 477 U.S. 57 [91 L.Ed.2d 49, 106 S.Ct. 2399], and especially the concurring opinion of Justice Marshall. With

---

[21]In 1986, in *Jones* v. *Continental Corp.* (6th Cir. 1986) 789 F.2d 1225, 1231, plaintiff lost a Title VII case at trial, and attorney fees were assessed against her for "unreasonable and vexatious" litigation. One of several "glaring legal deficiencies" cited by the trial court was plaintiff's "failure to specify under which statute the individual defendants (as opposed to the employer) were being sued." The Sixth Circuit found the "legal deficiencies" insufficient to support the fee award, noting that "[s]ince the individual employees sued were at least arguably 'agents' of the employer," plaintiff's counsel "were properly seeking recovery against the individuals under" Title VII. Since the plaintiff had lost on the merits, however, the Sixth Circuit had no occasion to decide whether an actual Title VII award against an individual supervisor was proper.

the "agent" language included, the liability of the employer for the discriminatory conduct of the supervisory employees is clearer. The "agent" language therefore cannot be extended to create personal liability for supervisory employees simply on the theory that it has no other purpose.

3. *The incongruity between exempting small employers and yet holding individual nonemployers liable:*

■ Section 12926, subdivision (d) defines "employer" as including "any person regularly employing five or more persons." A person who regularly employs less than five other persons is not an "employer" for purposes of FEHA prohibitions on discrimination, and hence cannot be sued for discrimination. (*Jennings* v. *Marralle* (1994) 8 Cal.4th 121 [32 Cal.Rptr.2d 275, 876 P.2d 1074].) For purposes of harassment, however, "employer" is specially defined in section 12940, subdivision (h)(3)(A) to include any person regularly employing *one* or more persons. Section 12940, subdivision (h)(4) and (5) make clear that this special definition of "employer" as someone employing only *one* other person applies only to harassment claims, and that discrimination claims continue to be covered by the "five or more" definition in section 12926, subdivision (d). The Legislature thus made a clear distinction in California in the treatment of harassment claims versus the treatment of discrimination claims: small employers can be sued for harassment, but they cannot be sued for discrimination.

In Title VII and the ADA, employer is defined as a person employing 15 or more.[22] In the ADEA, employer is defined as a person employing 20 or more.[23] These definitions exempt small employers from federal employment discrimination litigation because "Congress did not want to burden small entities with the costs associated with litigating discrimination claims." (*Miller* v. *Maxwell's Intern. Inc.*, *supra*, 991 F.2d 583, 587; see also, e.g., *Birkbeck* v. *Marvel Lighting Corp.*, *supra*, 30 F.3d 507, 510 [purpose of exempting small employers is to reduce burden on small businesses].) Many of the federal cases which found no personal liability against individual supervisory employees based their decisions in part on the incongruity that would exist if small employers were exempt from liability while individual nonemployer supervisors were at risk of personal liability. (*Tomka* v. *Seiler Corp.*, *supra*, 66 F.3d 1295, 1314 [inconceivable that a Congress concerned with protecting small employers would simultaneously impose liability on individual employees]; *Birkbeck* v. *Marvel Lighting Corp.*, *supra*, 30 F.3d 507, 510 [incongruous to impose personal liability on individual nonemployer when small employers are exempted]; *Grant* v. *Lone Star Co.*, *supra*,

---

[22]42 United States Code sections 2000e(b), 12111(5)(A).
[23]29 United States Code section 630(b).

21 F.3d 649, 652 [inconceivable that Congress intended to protect small entities, yet allow liability against individuals—"the smallest of legal entities"]; *U.S. E.E.O.C.* v. *AIC Security Investigations, Ltd., supra,* 55 F.3d 1276, 1281 [limitation protecting small employers balances goal of stamping out discrimination with protection of small entities from hardships of litigation, individual liability for employees upsets that balance]; *Miller* v. *Maxwell's Intern. Inc., supra,* 991 F.2d 583, 587 [if Congress intended to protect small entities with limited resources, inconceivable that Congress intended to allow liability against individual employees].)

The same reasoning applies to our task of construing the employer definition in the FEHA. The Legislature clearly intended to protect employers of less than five from the burdens of litigating discrimination claims. (*Jennings* v. *Marralle, supra,* 8 Cal.4th 121.) We agree that it is "inconceivable" that the Legislature simultaneously intended to subject individual nonemployers to the burdens of litigating such claims. To so construe the statute would be "incongruous" and would "upset the balance" struck by the Legislature.

4. *Imposing personal liability on supervisory employees would create conflicts of interest and chill effective management while providing little or no additional protection to victims of discrimination:*

 For purposes of testing perceptions of legislative intent, the differing consequences of alternative constructions must be considered. (See, e.g., 7 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, § 94, pp. 146-148 [interpretation of statutes].) In the present context, imposing liability on individual supervisory employees would do little to enhance the ability of victims of discrimination to recover monetary damages, while it can reasonably be expected to severely impair the exercise of supervisory judgment. The minimal potential for benefit to an alleged victim juxtaposed with the potentially severe adverse effects of imposing personal liability on individual supervisory employees is an additional reason for our conclusion that this is not the result intended by the Legislature.

Many courts have noted the importance of maintaining the conditions in which impartial judgment can be exercised by officials performing duties in the public sector. (See, e.g., *Caldwell* v. *Montoya, supra,* 10 Cal.4th 972, 982 [noting " 'vital public interest in securing free and independent judgment' " of public sector employees in "dealing with personnel problems."]; *Lipman* v. *Brisbane Elementary Sch. Dist.* (1961) 55 Cal.2d 224, 230 [11 Cal.Rptr. 97, 359 P.2d 465] ["There is a vital public interest in securing free and

independent judgment of school trustees in dealing with personnel problems, . . . ."]; *Rabkin* v. *Dean* (N.D.Cal. 1994) 856 F.Supp 543, 548 ["It is in the public interest that councilmembers feel free to exercise their judgment in refusing to raise the Auditor's salary without fear of burdensome litigation and personal liability for damages."].) Judge Learned Hand made a similar point long ago in *Gregoire* v. *Biddle* (2d Cir. 1949) 177 F.2d 579, 581, stating: "It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties . . . the answer must be found in a balance between the evils inevitable in either alternative. . . ." rather than in subjecting "those who try to do their duty to the constant dread of retaliation." (See also *Tietz* v. *Los Angeles Unified Sch. Dis.* (1965) 238 Cal.App.2d 905, 910 [48 Cal.Rptr. 245], quoting Judge Learned Hand.)

No one could reasonably doubt that effective and efficient management of industrial enterprises and other economic organizations is also important to the public welfare. The societal interest in effective private sector personnel management may be less direct, but only marginally (if at all) less compelling, as our recent economic malaise has demonstrated. Yet it is manifest that if every personnel manager risked losing his or her home, retirement savings, hope of children's college education, etc., whenever he or she made a personnel management decision, management of industrial enterprises and other economic organizations would be seriously affected. (See, e.g., *Birkbeck* v. *Marvel Lighting Corp.*, *supra*, 30 F.3d 507, 510 ["personal liability would place a heavy burden on those who routinely make personnel decisions"].)

Here we consider personnel management decisions which are facially common and unremarkable, but which may in hindsight be considered discriminatory. Plaintiffs easily dismiss this point with the same retrospectively oriented observation evaluated so long ago by Judge Learned Hand: a person whom we know to have deliberately engaged in prohibited conduct is not a sympathetic candidate for exoneration. Plaintiffs' observation has superficial appeal, but only because the proposition is presented retrospectively. Plaintiffs hypothesize a supervisor already known to be guilty of

discrimination and ask why he or she should not be personally liable. However, the conundrum—as Judge Learned Hand recognized—is that life is not lived retrospectively, but rather prospectively. Individual supervisors must be able to make well-considered personnel decisions before knowing what claims an employee may later advance or what conclusions a judge or jury may later reach.

Plaintiffs' theory would place a supervisory employee in a direct conflict of interest with his or her employer every time that supervisory employee was faced with a personnel decision. Every employee owes his or her employer duties of undivided care and loyalty. (See, e.g., 2 Witkin, Summary of Cal. Law (9th ed. 1987) Agency and Employment, §§ 5, 41-43, pp. 24, 53-55.) Plaintiffs' theory, however, would coerce the supervisory employee not to make the optimum lawful decision for the employer. Instead, the supervisory employee would be pressed to make whatever decision was least likely to lead to a claim of discrimination against the supervisory employee personally, or likely to lead only to that discrimination claim which could most easily be defended. The employee would thus be placed in the position of choosing between loyalty to the employer's lawful interests at severe risk to his or her own interests and family, versus abandoning the employer's lawful interests and protecting his or her own personal interests. The insidious pressures of such a conflict present sobering implications for the effective management of our industrial enterprises and other organizations of public concern. We believe that if the Legislature intended to place all supervisory employees in California in such a conflict of interest, the Legislature would have done so by language much clearer than that used here.[24]

Moreover, imposing personal liability against individual supervisory employees adds little to an alleged victim's legitimate prospects for monetary

---

[24]Labor Code section 2802, which generally requires employers to indemnify their employees for losses incurred in the discharge of the employee's duties, shows a legislative intent that duty-related losses ultimately fall on the business enterprise, not on the individual employee. The statute provides some measure of protection for employees, although no express statutory duty to defend. (But see *Douglas* v. *Los Angeles Herald-Examiner* (1975) 50 Cal.App.3d 449 [123 Cal.Rptr. 683] [finding statute to contain a duty to defend].) The protection provided is qualified by requirements that the employee's expenditures be necessary and that compensable losses be "in direct consequence" of discharge of duties.

The statute provides uncertain indemnity protection in the discrimination context. An employee is eligible for indemnity only if the employee did not know that the liability-causing conduct was unlawful. However, for a personnel action to be found discriminatory, that personnel action must be found motivated by a prohibited consideration. If a jury finds that a supervisory employee was motivated by a prohibited consideration rather than by a lawful one, it seems unlikely that the supervisory employee could then prove lack of knowledge of the prohibition. Hence, the reach of the statutory indemnity requirement to this situation is unclear. Numerous factual issues could be presented in an effort to enforce indemnity rights in the discrimination context, and the prospect of indemnity is by no means

recovery. The plaintiff-employee's primary target remains the employer.[25] Adding individual supervisors personally as defendants adds mostly an in terrorem quality to the litigation, threatening individual supervisory employees with the spectre of financial ruin for themselves and their families and correspondingly enhancing a plaintiff's possibility of extracting a settlement on a basis other than the merits. Enhancing the prospects for obtaining a settlement on a basis other than the merits is hardly a worthy legislative objective, and we do not ascribe such an intention to the Legislature.

The only marginally legitimate purpose for adding individual supervisory employees as defendants is the possibility that the employer will file for bankruptcy protection and be unable to respond fully in damages. This prospect cuts both ways, however. Employment with an employer about to go bankrupt is in jeopardy in the first instance, and hence is of inherently lesser value than employment with a healthy and solvent employer. Loss or impairment of employment with an employer on the brink of bankruptcy would thus cause correspondingly less compensable damage. At the same time, it is often when companies are struggling for their financial survival that the most difficult personnel decisions must be made. A legal regime in which individual supervisory employees were personally liable after bankruptcy of the employer (a bankruptcy which would potentially result in unemployment for the supervisory employees as well) would mean that salvage of a troubled business would be all that less likely, as managers declined to make decisions necessary to save the enterprise. The public policy implications of these factors are significant, yet we have not been cited to any mention or consideration of them in the history of the legislative enactment here under examination. The fact that these considerations were apparently not considered by the Legislature reinforces our conclusion that the concept of providing a source of recovery in the event of bankruptcy is too attenuated to be considered a factor motivating the Legislature, especially in view of the ambiguous language used.

Little would be added to the protection of employees by the addition of individual supervisory employees as defendants, and what little would be added would be at potentially great cost. We do not think the Legislature intended such a result; if it did we would expect it stated in less ambiguous language and reflected in the legislative history. The construction we choose avoids conflicts of interest by harmonizing the FEHA statutory provisions

---

certain. (See *Grissom* v. *Vons Companies, Inc.* (1991) 1 Cal.App.4th 52 [1 Cal.Rptr.2d 808] [necessity of expenditures a question of fact; no statutory duty to defend].) In the event the employer is in poor financial condition, the risks of receiving no indemnity are magnified.

[25]In this case, for example, plaintiffs' case continues against Hughes.

with the duties of supervisory employees, and does so without doing any significant harm to plaintiffs' legitimate interests.

### 5. The "chamber of horrors" argument:

In many of the federal cases which construed the "agent" language not to create personal liability for individual supervisors, it was argued that such a construction would open the floodgates of discrimination, would give supervisors a "free pass" to discriminate, would "liberate" supervisors to discriminate "with impunity," and the like.[26] All the recent cases have rejected such arguments. One case rejected this "parade of horribles" as "Chicken Little-esque." (*U.S. E.E.O.C.* v. *AIC Security Investigations, Ltd., supra*, 55 F.3d 1276, 1282.) Another considered this "chamber of horrors" argument and was "not persuaded." (*Lenhardt* v. *Basic Institute of Technology, Inc., supra*, 55 F.3d 377, 381.) Another found the argument "unsound." (*Miller* v. *Maxwell's Intern. Inc., supra*, 991 F.2d 583, 588.)

■ The cases have rejected such arguments because the employer remains liable. "An employer that has incurred civil damages because one of its employees believes he can violate Title VII with impunity will quickly correct that employee's erroneous belief." (*Miller* v. *Maxwell's Intern. Inc., supra*, 991 F.2d 583, 588.) "The employing entity is still liable, and that entity and its managers have the proper incentives to adequately discipline wayward employees, as well as to instruct and train employees to avoid actions that might impose liability." (*U.S. E.E.O.C.* v. *AIC Security Investigations, Ltd., supra*, 55 F.3d 1276, 1282.) "As a practical matter employees who unlawfully discriminate against their fellow employees, and who thereby expose their employer to liability, do not get anything like a 'free pass' to continue their wrongdoing with impunity. By incorporating the principles of *respondeat superior* into Title VII, Congress has required employers to answer for prohibited acts of discrimination perpetrated by their employees. An employer subjected to well-founded claims of employment discrimination as a result of an employee's intentional acts of discrimination is not likely to look favorably upon the offending employee. To the contrary, the employer, to protect its own interests and to avoid further liability, almost certainly will impose some form of discipline upon the offending employee. That discipline may include a 'free pass' to the unemployment line, a result that would seem particularly likely if the employee

---

[26]See, e.g., *U.S. E.E.O.C.* v. *AIC Security Investigations, Ltd., supra*, 55 F.3d 1276, 1282; *Lenhardt* v. *Basic Institute of Technology Inc., supra*, 55 F.3d 377, 381; *Miller* v. *Maxwell's Intern. Inc., supra*, 991 F.2d 583, 588; *Stephens* v. *Kay Management Co., Inc., supra*, 907 F.Supp. 169, 174.

engages in repeated acts of intentional discrimination against fellow employees." (*Lenhardt* v. *Basic Institute of Technology, Inc., supra,* 55 F.3d 377, 381; see also *Birkbeck* v. *Marvel Lighting Corp., supra,* 30 F.3d 507, 510 ["Employer liability ensures that no employee can violate the civil rights laws with impunity"]; *Stephens* v. *Kay Management Co., Inc., supra,* 907 F.Supp. 169, 174 [supervisory employees are not liberated to discriminate with impunity because the employer remains liable].)

The reasoning of these cases applies here. The fact that the employer is liable via the respondeat superior effect of the "agent" language provides protection to employees even if individual supervisors are not personally liable. Hence we do not find this consideration to compel a conclusion that the Legislature must have intended to impose personal liability on individual supervisory employees.

6. *The aiding and abetting claim:*

Section 12940, subdivision (g) provides that it is an unlawful employment practice for "any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden" by the FEHA, or "to attempt to do so." Plaintiffs contend that the supervisory employee defendants here can be held liable on the theory that, in making the challenged personnel decisions on behalf of Hughes, they "aided and abetted" Hughes.

Preliminarily, we can discern purposes for the "aid and abet" language independent of any involving the liabilities of supervisory employees. This language makes it unlawful, for example, for third parties such as customers or suppliers to induce or coerce prohibited discrimination or harassment. Plaintiffs contend, however, that this "aid and abet" language also places individual supervisory employees at risk of personal liability for personnel management decisions in which they participate. We must now decide whether the Legislature intended to accomplish a result so significant by a method so abstruse.

Aiding and abetting occurs when one helps another commit a prohibited act. (See, e.g., *Saunders* v. *Superior Court* (1994) 27 Cal.App.4th 832, 846 [33 Cal.Rptr.2d 438].) The concept of aiding and abetting involves two separate persons, one helping the other. Here we deal with individual employees of a corporate employer. A corporation can act only through its individual employees. (*Moore* v. *Phillips* (1959) 176 Cal.App.2d 702, 709 [1 Cal.Rptr. 508].) Our question is whether it can properly be said that a corporate employee is "aiding and abetting" his or her corporate employer when the corporate employee acts on behalf of the corporation by making a

personnel decision or, more precisely, whether this is the meaning intended by the Legislature.

■ Conspiracy is a concept closely allied with aiding and abetting. A conspiracy generally requires agreement plus an overt act causing damage. (See, e.g., *Doctors' Co. v. Superior Court* (1989) 49 Cal.3d 39, 44 [260 Cal.Rptr. 183, 775 P.2d 508].) Aiding and abetting requires not agreement, but simply assistance. The common basis for liability for both conspiracy and aiding and abetting, however, is concerted wrongful action. (*Howard v. Superior Court* (1992) 2 Cal.App.4th 745, 749 [3 Cal.Rptr.2d 575]; Rest.2d Torts, § 876.) A corporate employee cannot conspire with his or her corporate employer; that would be tantamount to a person conspiring with himself. Thus when a corporate employee acts in his or her authorized capacity on behalf of his or her corporate employer, there can be no claim of conspiracy between the corporate employer and the corporate employee. (*Doctors' Co. v. Superior Court, supra,* 49 Cal.3d 39, 45; *Marin v. Jacuzzi* (1964) 224 Cal.App.2d 549, 554 [36 Cal.Rptr. 880].) In such a circumstance, the element of concert is missing.

■ Similar reasoning applies to aiding and abetting. Linguistically, it is questionable whether it can properly be said that an employee who exercises delegated personnel management authority is "aiding and abetting" his or her employer in managing personnel, and the stilted and unusual nature of such a usage alone casts doubt on plaintiffs' construction. Had the Legislature intended to place all employees charged with the duty of making personnel decisions in California at risk of personal liability, we believe the Legislature would have done so by language more direct and less susceptible to doubt. Moreover, since a corporation can act only through its employees, the element of concert is missing in the "aiding and abetting" context just as in the conspiracy context.

The not untypical allegations in this case illustrate the problematic nature of plaintiffs' construction. The allegations charge that the individual supervisory defendants made their personnel decisions in accordance with corporate policy, but that the corporate policy violated the FEHA. The corporate policy can only be implemented by individuals, hence the construction urged by plaintiffs would regularly place the personnel management risks of a corporate enterprise upon individuals who are merely employees of the enterprise. Those individual supervisory employees would bear a greater personnel management risk than the owners of the corporation who benefit from the fruits of the enterprise, but who are not exposed to personal liability because of the limited liability nature of a corporation. These considerations

raise "incongruities" of the same type that caused the federal circuits to find that the "agent" language was not intended to impose personal liability on individual supervisory employees. A known agent of a disclosed principal is not normally personally liable for transactions consummated on behalf of the principal. Plaintiffs here contend that the Legislature intended a different rule to apply here without saying so directly.[27] For the reasons stated here plus those stated above in connection with the "agent" issue, we conclude that the Legislature did not intend to impose personal liability upon individual supervisory employees by the roundabout method of "aiding and abetting" language. If we have misperceived the Legislature's intent, the Legislature can correct our misperception by enacting statutory language clearly stating the exposure to personal liability of all individual supervisory employees in California.

## IV. APPLICATION TO THIS CASE

■ The factual allegations in the present case plead claims of discrimination, but not claims of harassment. Broadly construing the factual allegations of the complaint, which are liberally interspersed with characterizations and conclusions, the complaint variously alleges that the defendants collectively or individually downgraded or altered plaintiffs' performance appraisals; demoted, terminated or laid off plaintiffs; failed to promote or failed to transfer plaintiffs; failed to provide plaintiffs with salaries commensurate with their qualifications, experience and responsibilities; placed a "cap" on salaries of long-term employees such as plaintiffs; sent plaintiffs "at risk" notifications warning of possibly impending layoffs, or at other times failed to send "at risk" notifications warning of possibly impending layoffs; failed to provide plaintiffs with work assignments; failed to provide plaintiffs with sufficient clerical or secretarial support; failed to respond to correspondence sent by plaintiffs to "senior Hughes management"; "accused" one plaintiff of not properly maintaining a time card; and similar claims.

The allegations in the complaint here fail to plead facts which, if true, could legally constitute harassment. All the actions alleged here are within the realm of properly delegated personnel management authority. The personnel management actions alleged here would be unlawful only if motivated by prohibited discriminatory considerations. This alleged conduct, if first proven true and if then proven motivated by prohibited considerations,

---

[27]Here we consider facially routine and proper personnel decisions which could later be considered discriminatory. We do not consider criminal liability for criminal conduct. Criminal conduct is not within the legitimate scope of delegated personnel management authority.

would constitute discrimination, not harassment. Since we have concluded that only employers—and not individual supervisory employees—are at risk of liability for discrimination, and since only discrimination is alleged here, the trial court was correct in dismissing the individual supervisory employees.

The intentional infliction of emotional distress claim fails for similar reasons. An essential element of such a claim is a pleading of outrageous conduct beyond the bounds of human decency. (See, e.g., *Cole* v. *Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 155 [233 Cal.Rptr. 308, 729 P.2d 743]; *Agarwal* v. *Johnson* (1979) 25 Cal.3d 932 [160 Cal.Rptr. 141, 603 P.2d 58].) Managing personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society. A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged. If personnel management decisions are improperly motivated, the remedy is a suit against the employer for discrimination.

### DISPOSITION

The order of the trial court dismissing the individual defendants is affirmed. Each side to bear its own costs on appeal.

Boren, P. J., and Fukuto, J., concurred.

A petition for a rehearing was denied June 25, 1996, and appellants' petition for review by the Supreme Court was denied August 28, 1996. Mosk, J., was of the opinion that the petition should be granted.