Filed 5/5/25  Pelayo v. Star Fisheries CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| JORGE PELAYO, | B336777 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 21STCV16031) |
| v. | |
| STAR FISHERIES, INC. et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Thomas D. Long, Judge.  Affirmed.

Gary Rand & Suzanne E. Rand-Lewis and Suzanne E. Rand-Lewis for Plaintiff and Appellant.

Payne & Fears, Jeffrey K. Brown and Ryan L. Kilpatrick for Defendants and Respondents.

————————————

Plaintiff and appellant Jorge Pelayo filed a complaint against defendants and respondents Star Fisheries, Inc., Deanne Inman, and John Swain (collectively, defendants) arising from his employment from 2018 to 2019. Defendants moved for summary judgment or, in the alternative, summary adjudication. Pelayo did not file an opposition. The trial court granted summary adjudication on each cause of action and entered judgment in defendants' favor. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Star Fisheries provides fresh and frozen seafood products to retail stores in Southern California. Inman was the Director of Internal Operations. She supervised daily operations, "including scheduling and directing the work of" the company's drivers. Swain, the Fleet and Driver Manager, supervised the delivery drivers.

In January 2016, Star Fisheries hired Pelayo as a delivery driver. Pelayo held a Class C driver's license allowing him to drive smaller "bobtail" or "box" trucks. Star Fisheries terminated his employment in August 2017, after a federal court entered a preliminary injunction requiring Star Fisheries to reinstate union drivers who had been on strike.

In May 2018, Star Fisheries rehired Pelayo as a full-time driver. Pelayo joined the local Teamsters union. Star Fisheries and the union were parties to a collective bargaining agreement (CBA). The CBA required Star Fisheries to provide all full-time drivers "forty (40) hours of work per week or pay in lieu thereof, unless the employee makes him or herself unavailable for work." Per the CBA, Star Fisheries could "employ part-time drivers at a ratio of one (1) part-time driver for every eight (8) full-time drivers, or major portion thereof." The CBA also required Star

2

Fisheries to give priority to drivers based on seniority. For example, if a full-time position became available, Star Fisheries was required to "offer it to all part-time drivers in seniority order." The CBA provided that in the event of a layoff, "employees shall be placed on a 'Reemployment List' on the basis of seniority, the last to be hired to be laid off . . . ."

Pelayo claimed that during his employment, Swain was "biased" against him. Pelayo asserted Swain "never granted any of [Pelayo's] requests" for longer driving routes and favored other drivers over him regarding route assignments.

In June 2018, Pelayo and other current and former delivery drivers filed a civil lawsuit against Star Fisheries in the Los Angeles Superior Court. The lawsuit concerned working conditions, including safety and unpaid overtime. Before filing the lawsuit, Pelayo had complained to human resources about safety issues. Inman and Swain learned Pelayo was a plaintiff in the lawsuit at the time it was filed.

According to Inman, in April 2019, Star Fisheries anticipated the return of two drivers who had been on leaves of absence. In May 2019, Inman learned that Stater Brothers, a Star Fisheries customer, would begin accepting only one daily delivery, six days a week, at its central warehouse, instead of deliveries at each of its 60 retail locations. Stater Brothers "had already significantly decreased the number of store-delivery orders that Star received." Inman reviewed the hours of the full-time drivers and concluded that Star Fisheries "had more full-time drivers than necessary, and that, unless Star moved at least two drivers into part-time status, the Company would be forced by . . . the CBA to pay drivers for more hours than they actually worked." In May 2019, Inman transitioned Pelayo and another

3

driver, Brian Hagerty, to part-time schedules because they had the least seniority of all the drivers.

In July 2019, Star Fisheries decided to consolidate several delivery routes of the smaller bobtail trucks into fewer routes to be serviced by larger semi-trailer trucks. Only drivers with Class A commercial driver's licenses may operate the larger trucks. Around the same time, the change to Stater Brothers' delivery operations took effect. As a result, despite having reduced Pelayo and Hagerty to part-time status, Star Fisheries no longer had enough work for the remaining full-time drivers. Inman decided to transition the two least senior full-time Class C drivers to part-time status. And, to comply with the CBA's ratio of part-time to full-time drivers, Inman decided to "bump," or lay off, Pelayo and Hagerty as the two part-time Class C drivers with the lowest seniority. In July 2019, she informed the union representative by e-mail that Star Fisheries was laying off Pelayo and Hagerty at the end of the month.

In April 2021, Pelayo filed a complaint "relating to the period of employment in which he was rehired in 2018 and effectively suspended May 3, 2019, and terminated May 5, 2019."[1] He alleged that he "was exposed to a severe, pervasive violent and hostile work environment by" Inman and Swain, including "verbal racially prejudiced diatribes, profanity, physical battery, violence and threats of violence from Defendants' former

---

[1] Although Pelayo's complaint refers briefly to conduct occurring during his first period of employment from 2016 to 2017, and indicates the conduct "continued" when he was rehired in 2018, he does not seek relief for harm occurring during that earlier period. Our discussion is limited to Pelayo's employment with Star Fisheries from 2018 to 2019.

4

employees and their associates . . . ." He also alleged that defendants allowed harassing behavior, including "racial epithets, epithets based upon national origin, that the Plaintiff was not 'American' and not entitled to the job of an 'American.' "

Pelayo also alleged that defendants "harassed and retaliated against" him because he "protested and affiliated himself with former workers, many of whom . . . were older Latinos, . . . [who] were also being treated unfairly."

Finally, Pelayo alleged that he hurt his back at work and required time off as an accommodation. He alleged that he "was afraid to report his injury and disability to Defendants" because they threatened to fire employees for filing a worker's compensation claim, returning to work with restrictions, or seeking ongoing medical care. He further alleged that "[d]efendants refused any accommodation including family medical leave." Pelayo claimed that in May 2019, Inman and Swain retaliated against him by "effectively terminat[ing]" him as a full-time driver by "reducing/suspending his work schedule to one day with no notice."

Pelayo asserted the following causes of action: (1) wrongful termination in violation of public policy; (2) discrimination, harassment, and retaliation in violation of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.); (3) harassment in violation of FEHA; (4) meal break, rest break, and overtime violations (Lab. Code, §§ 226, 512; Wage Order 2-2001);[2] (5) violations of whistleblower protections (Lab. Code,

---

[2] Defendants removed the action to federal court in September 2021. In June 2022, Pelayo dismissed his fourth

5

§§ 98.6, 1102.5, 6310, 6400); (6) failure to provide accurate itemized wage statements and copy of personnel records (Lab. Code, §§ 226, 1198.5); (7) intentional infliction of emotional distress; and (8) unlawful, unfair, or fraudulent business practices under the Unfair Competition Law (UCL) (Bus. & Prof. Code, § 17200 et seq.).[3]

In June 2023, defendants moved for summary judgment or, in the alternative, summary adjudication. Defendants contended the National Labor Relations Act preempted all but one of the complaint's causes of action. Alternatively, defendants requested summary adjudication of each cause of action on the merits. Defendants argued that Pelayo's first cause of action for wrongful termination failed as a matter of law because Pelayo had not identified the public policy violated by his termination. As to Pelayo's wrongful termination claim, his discrimination and retaliation claims under FEHA, and his whistleblower claims under Labor Code sections 98.6, 1102.5, and 6310, defendants argued that Pelayo could not establish a prima facie case; defendants had shown legitimate, nondiscriminatory or nonretaliatory reasons for the reduction of his hours and his termination; and, where applicable, Pelayo had failed to show the reasons were pretextual. Defendants also contended Pelayo could not establish the prima facie elements of harassment.

---

cause of action with prejudice in exchange for defendants' agreement to remand of the case to state court.

[3]    Pelayo asserted the first, second, fourth, fifth, and sixth causes of action against Star Fisheries; the third cause of action against Inman and Swain; and the seventh and eighth causes of action against all defendants.

6

Defendants argued Pelayo's sixth cause of action for records violations failed because the undisputed facts showed that Star Fisheries had promptly corrected the inaccuracies in his wage statements. As to his claim of intentional infliction of emotional distress, defendants contended Pelayo could not show that any defendant engaged in extreme and outrageous conduct or that he suffered severe or extreme emotional distress. Finally, defendants argued that Pelayo's UCL claim was derivative of his other causes of action and therefore failed as a matter of law.

Pelayo twice moved ex parte to continue the hearing on defendants' motion and to extend his time to file an opposition. The trial court granted both requests. Despite the extensions, Pelayo did not file an opposition to the motion. In a reply brief, defendants argued the court should grant the motion as unopposed.

Pelayo's counsel did not appear at the November 16, 2023 hearing. In a written order, the court rejected defendants' preemption argument but granted summary adjudication on each cause of action.

After considering the elements of each claim, the trial court found that, with respect to Pelayo's causes of action under FEHA, his whistleblower causes of action, his claim for records violations, and his claim for intentional infliction of emotional distress, defendants "met their initial burdens on the merits of each claim" and Pelayo "did not file an Opposition to create any triable issue of fact." The court further concluded the wrongful termination in violation of public policy and UCL causes of action were derivative of his other claims and therefore failed to withstand summary adjudication.

Pelayo timely appealed from the December 2023 judgment.

7

# DISCUSSION

## I. Standard of Review

" 'The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute.' (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).) The summary judgment statute, Code of Civil Procedure section 437c, thus 'provides a particularly suitable means to test the sufficiency of the plaintiff's prima facie case and/or of the defendant's [defense].' [Citation.]" (*Gray v. La Salle Bank, N.A.* (2023) 95 Cal.App.5th 932, 946 (*Gray*).)

When a defendant moves for summary judgment or summary adjudication, the defendant " 'bears the burden of persuasion that "one or more elements of" the "cause of action" in question "cannot be established," or that "there is a complete defense" thereto. [Citation.]' [Citation.] A 'defendant need . . . [only] show that the plaintiff cannot establish at least one element of the cause of action.' (*Aguilar*, *supra*, [25 Cal.4th] at p. 853.) The defendant negates the element of the cause of action by establishing that the plaintiff neither has, nor reasonably can obtain, the evidence required to support it. (*Id.* at p. 854.)" (*Gray*, *supra*, 95 Cal.App.5th at pp. 946–947.)

Under this approach, "a defendant's initial evidentiary showing may 'consist of the deposition testimony of the plaintiff's witnesses, the plaintiff's factually devoid discovery responses, or admissions by the plaintiff in deposition or in response to requests for admission that he or she has not discovered anything that supports an essential element of the cause of action.' [Citation.]" (*Leyva v. Garcia* (2018) 20 Cal.App.5th 1095, 1102

8

(*Leyva*); *Sweeting v. Murat* (2013) 221 Cal.App.4th 507, 514, fn. 8 (*Sweeting*) [plaintiff's deposition testimony that plaintiff does not possess evidence to support elements of claim sufficient to shift burden].) "Only if the defendant meets its initial burden does the burden shift to the plaintiff to show a triable issue exists." (*Jones v. Awad* (2019) 39 Cal.App.5th 1200, 1207 (*Jones*).)

" ' 'On appeal after a motion for summary judgment [or summary adjudication] has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained. [Citation.]' " (*Smith v. Wells Fargo Bank, N.A.* (2005) 135 Cal.App.4th 1463, 1472, quoting *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) "Upon review, the appellate court applies the same three-step analysis as the trial court. [Citation.] This requires the court to (1) identify the issues framed by the pleadings, (2) determine whether the moving party has established facts justifying judgment in its favor, and (3) determine whether the nonmoving party has demonstrated a triable issue of material fact." (*Jones*, *supra*, 39 Cal.App.5th at pp. 1206–1207.)

## II. Forfeiture

As an initial matter, defendants argue that we should affirm summary judgment solely on the basis that Pelayo forfeited all arguments on appeal by electing not to file an opposition to defendants' motion. We note that while this appeal was pending, our colleagues in Division Five addressed similar procedural circumstances in *Mandell-Brown v. Novo Nordisk Inc.* (2025) 109 Cal.App.5th 478 (*Mandell-Brown*).

In *Mandell-Brown*, as in this case, the FEHA plaintiff sought two extensions to oppose a summary judgment motion,

9

failed to file an opposition, and failed to appear at the hearing on the motion.  (*Mandell-Brown*, *supra*, 109 Cal.App.5th at pp. 481–482.)  The trial court ruled that based on the lack of an opposition, it would deem the plaintiff to have conceded and granted the motion.  (*Id.* at p. 482.)  The plaintiff subsequently appealed, arguing that even absent an opposition, the trial court was required to review the evidence to determine whether the defendants met their burden of proof on summary judgment.  (*Id.* at p. 484.)

The appellate court rejected the plaintiff's argument, concluding that under Code of Civil Procedure section 437c, subdivision (b)(3), the trial court had the discretion to grant the summary judgment motion on the ground that the plaintiff failed to submit a separate statement.  (*Mandell-Brown*, *supra*, 109 Cal.App.5th at p. 484.)

This case is similar to *Mandell-Brown*, in that the summary judgment motion was required to address the complaint's multiple causes of action and legal theories.  As in *Mandell-Brown*, "[g]iven the complexity of the motion, the trial court . . . was entitled to the benefit of an opposing separate statement, as required under the statute, to aid in its analysis of the multiple causes of action and their elements."  (*Mandell-Brown*, *supra*, 109 Cal.App.5th at p. 485.)  Moreover, it is a fundamental rule of appellate review that ordinarily " 'the failure to preserve a point below constitutes a [forfeiture] of the point.' " (*Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 698.)

However, unlike the trial court in *Mandell-Brown*, the trial court here conducted a review of defendants' evidence despite Pelayo's failure to file an opposition or separate responsive

10

statement.  Given the trial court's approach below, and our discretion to review forfeited claims on appeal (*In re H.D.* (2024) 99 Cal.App.5th 814, 817), we independently review defendants' evidence to determine whether summary judgment was properly granted.

## III.   Separate Statement

In its ruling, the trial court noted the defendants' separate statement "unnecessarily repeated" facts, many of which were not material to the claims or were not facts at all.  The court acknowledged its inherent authority to strike the statement based on these defects but decided not to, instead cautioning counsel "to include only facts that are truly material to the motion."  Pelayo contends the trial court reversibly erred by failing to strike defendants' separate statement of undisputed facts for various "patent defects," and by failing to deny defendants' motion for lacking sufficient and competent evidentiary support.  We reject this argument.

A trial court's authority to deny summary judgment or summary adjudication due to a defective separate statement is discretionary, not mandatory.  (Code Civ. Proc., § 437c, subd. (b)(1) [failure to comply with separate statement requirements "may in the court's discretion constitute a sufficient ground for denying the motion"]; *Brown v. El Dorado Union High School Dist.* (2022) 76 Cal.App.5th 1003, 1019 [" 'The statute' governing the format of summary judgment moving papers, 'is permissive, not mandatory' "].)  Here, the decision not to strike defendants' separate statement, notwithstanding its procedural flaws, fell squarely within the court's discretion.  The trial court was able to ascertain the facts material to the resolution of defendants' motion.  Moreover, Pelayo has failed to explain how

11

the defects in defendants' separate statement "impaired [his] ability to marshal evidence to show that material facts were in dispute" as to his claims. (*Truong v. Glasser* (2009) 181 Cal.App.4th 102, 118 [no abuse of discretion in declining to reject summary judgment motion based on the absence of headings in separate statement]; see also *Brown*, at p. 1020.)

## IV. The Trial Court Properly Granted Summary Judgment on Pelayo's FEHA Causes of Action

### A. Discrimination (Second Cause of Action)

The FEHA prohibits employers from discriminating against employees because of protected classifications, including but not limited to race, sex, religion, and disability. (Gov. Code, § 12940, subd. (a).) "In evaluating claims of discrimination under FEHA, California courts apply the burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 [(*McDonnell Douglas*)]. [Citations.] [¶] Under this approach, if the plaintiff establishes a prima facie case supporting his or her discrimination claim, the burden of production shifts to the employer to rebut the presumption of discrimination by offering a legitimate, nondiscriminatory reason for the adverse employment action." (*Martin v. Board of Trustees of California State University* (2023) 97 Cal.App.5th 149, 161 (*Martin*).) If an employer makes this showing, the burden shifts back to the plaintiff to show the reason is pretext for a discriminatory motive. (*Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1005.)

Courts apply a modified *McDonnell Douglas* framework when an employer defendant moves for summary judgment or summary adjudication. (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 861.) An employer must first produce

12

evidence to show that " 'one or more elements of plaintiff's prima facie case is lacking or that the adverse employment action was based upon legitimate, nondiscriminatory [or nonretaliatory] factors.' [Citations.]" (*Ibid*.) "If the employer meets its initial burden, the burden shifts to the employee to 'demonstrate a triable issue by producing substantial evidence that the employer's stated reasons were untrue or pretextual . . . .' " (*Ibid*.)

        1.    <u>Undisputed facts show Pelayo cannot establish a prima facie case for disability discrimination</u>

Pelayo's complaint alleges defendants refused to accommodate him for a disability he suffered after being injured at work. To raise a presumptive inference of disability discrimination, Pelayo is required to show that he "suffered from a disability or was regarded as suffering from a disability." (*Glynn v. Superior Court* (2019) 42 Cal.App.5th 47, 53, fn. 1.)

However, at his deposition, Pelayo testified that he did not sustain an injury at work, did not have any physical limitations or injuries requiring an accommodation, and did not request an accommodation from defendants. Further, both Inman and Swain stated in their declarations that Pelayo never informed them of any injury or disability, or communicated a need for an accommodation.

Defendants therefore satisfied their initial evidentiary burden to show that Pelayo did not have and could not obtain facts to establish the first element of his prima facie disability discrimination claim. (*Leyva, supra*, 20 Cal.App.5th at pp. 1102–1103.)

13

2.    Undisputed facts show Pelayo cannot establish a prima facie case for other forms of discrimination

Pelayo's complaint alleged Swain "disliked [Pelayo] and expressed bias in his demeanor and treatment of" him.  To establish a prima facie case, Pelayo is required to prove, among other things, " ' "the existence of discriminatory animus and a causal link between it and the challenged [adverse] action" . . . .' " (*Wallace v. County of Stanislaus* (2016) 245 Cal.App.4th 109, 130.)  Further, to the extent Pelayo alleges defendants' comparatively different treatment of him was actionable discrimination under FEHA, he is required to establish that he is a member of a protected class and defendants treated employees outside that protected class more favorably.  (*Gupta v. Trustees of California State University* (2019) 40 Cal.App.5th 510, 519; *Mamou v. Trendwest Resorts, Inc.* (2008) 165 Cal.App.4th 686, 713.)  Defendants demonstrated Pelayo cannot meet these burdens.

In his deposition, Pelayo explained he believed Swain was "biased" against him because "he never granted any of [Pelayo's] requests" for longer driving routes.  However, Pelayo could not identify any drivers Swain purportedly favored.  He testified that he did not know why Swain appeared to favor other drivers over him.  Pelayo also stated he felt Swain was "always against [him]" and nothing he did was "enough" for Swain.  But when probed further about Swain's purported bias, Pelayo did not testify that Swain's treatment of him was on a prohibited basis.  He did not recall Swain ever making statements to him about his race, ancestry, color, family or medical leave, disability, or age.  He denied that he ever asked for medical or family leave or discussed

14

it with Swain. Pelayo also could not recall Inman making any such statements.[4]

Both Inman and Swain denied that they treated Pelayo differently from other employees or subjected him to any hostile conduct based on his race, ethnicity, or nationality. They both further attested that Hagerty, the other Class C driver who was transitioned to part-time and later laid off along with Pelayo, was not a member of any protected class relevant to Pelayo's claims.

Pelayo was in the best position to identify instances of discriminatory treatment that occurred during his employment. Yet, he could not identify any facts that would establish his prima facie burden to show that defendants' actions were motivated by discriminatory animus. Pelayo's admission that he could not recall experiencing any facially discriminatory treatment, his inability to identify similarly situated employees who received more favorable treatment, and defendants' supporting declarations, were sufficient to satisfy defendants' initial burden to show that Pelayo could not establish essential elements of his prima facie case for discrimination under FEHA. (Cf. *McGonnell v. Kaiser Gypsum Co.* (2002) 98 Cal.App.4th 1098, 1104 [testimony from plaintiff that he had no knowledge of exposure to product containing asbestos was sufficient to shift burden when plaintiff knew what materials he worked with and was therefore "best person" to identify his exposure].)

---

[4] With respect to Inman, Pelayo testified that he did not know whether she had a role in assigning routes. His allegations against Inman were based solely on the fact that she supervised Swain. Pelayo testified that besides Inman and Swain, he could not identify anyone else at Star Fisheries who discriminated against him.

15

### 3. Defendants proffered lawful reasons for the adverse actions and Pelayo has not raised an inference of pretext

Moreover, defendants produced evidence of legitimate, nondiscriminatory reasons for reducing Pelayo's hours in May 2019 and terminating him in July 2019.

To show a legitimate, nondiscriminatory reason for an adverse action, " 'the [employer] must clearly set forth, through the introduction of admissible evidence, the reasons for the [adverse action].' " (*Clark v. Claremont University Center* (1992) 6 Cal.App.4th 639, 664, quoting *Texas Dept. of Community Affairs v. Burdine* (1981) 450 U.S. 248, 254–255.) "A legitimate, nondiscriminatory reason is one that is unrelated to unlawful bias and, if true, would preclude a discrimination finding." (*Martin*, *supra*, 97 Cal.App.5th at p. 162.)

Here, Inman declared, and her July 2019 e-mail partially corroborated, that changes to both customer and internal operations created an excess of Class C drivers for the available delivery routes. The CBA required Star Fisheries to employ a certain ratio of full-time to part-time drivers and gave priority to drivers with seniority. Inman explained that due to these requirements, she reduced hours for and ultimately laid off Pelayo and Hagerty. This was a legitimate, nondiscriminatory explanation for changing Pelayo's work status to part-time and subsequently terminating his employment.

The burden thus shifted to Pelayo to raise triable issues as to whether Inman's proffered justifications were pretext for discrimination. (*Lyons v. Security Pacific Nat. Bank* (1995) 40 Cal.App.4th 1001, 1006–1007.) Pelayo did not attempt to meet

16

that burden.  The trial court properly granted summary adjudication of this cause of action.

### B.  Retaliation (Second Cause of Action)

FEHA retaliation claims are also analyzed under the *McDonnell Douglas* burden shifting analysis.  (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042 (*Yanowitz*).)

To establish a prima facie case for retaliation, Pelayo must show that he engaged in protected activity under FEHA, defendants subjected him to an adverse employment action, and there was a causal link between the two.  (*Yanowitz*, *supra*, 36 Cal.4th at p. 1042; Gov. Code, § 12940, subd. (h).)  In his complaint, Pelayo claimed that defendants harassed and retaliated against him because he "protested and affiliated himself" with older Latino employees who "were also being treated unfairly."  At his deposition, Pelayo testified that he had complained to human resources about safety issues and later participated in a lawsuit alleging workplace safety violations and unpaid overtime.

Pelayo's testimony did not clearly indicate he engaged in protected activity under FEHA, namely complaining about or protesting FEHA violations.  But even assuming Pelayo could establish a prima facie case of retaliation, defendants showed that they had legitimate, nonretaliatory reasons for subjecting Pelayo to the alleged adverse actions, as described above.  Pelayo produced no evidence to show defendants' proffered reasons " ' "had no basis in fact, . . . did not actually motivate the [reduction in hours or termination], or . . . [were] insufficient to motivate [the challenged adverse actions]." ' [Citations.]" (*Soria v. Univision Radio Los Angeles, Inc.* (2016) 5 Cal.App.5th 570,

17

594.) Summary adjudication in defendants' favor was therefore proper.

## C. Harassment (Second and Third Causes of Action)

Pelayo's complaint alleges that defendants' former employees and their "associates" subjected him to "verbal racially prejudiced diatribes, profanity, physical battery, violence and threats of violence," and "racial epithets, epithets based upon national origin, that the Plaintiff was not 'American' and not entitled to the job of an 'American.'"

Under FEHA, an employer is prohibited from harassing an employee because of a protected characteristic. (Gov. Code, § 12940, subd. (j)(1).) To establish a harassment claim based on a hostile work environment, Pelayo must show he was subjected to unlawful harassment based on a protected characteristic, and that this harassment "unreasonably interfered with [his] work performance by creating an intimidating, hostile, or offensive work environment." (*Ortiz v. Dameron Hospital Assn.* (2019) 37 Cal.App.5th 568, 581.)

In support of their motion, defendants produced Pelayo's deposition testimony in which he denied that anyone harassed him because of his ancestry, color, disability, age, or his "association with a member of a protected class." He denied that he was exposed to racial epithets or diatribes. He testified that he was not physically harmed or exposed to violence from current or former employees.

Pelayo's testimony directly contradicted the allegations of harassment in his complaint. That defendants did not honor his request for particular driving routes alone was insufficient to constitute prima facie evidence of a hostile work environment. (*Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55, 64–

18

65 (*Janken*) ["commonly necessary personnel management actions" such as "job or project assignments" "do not come within the meaning of harassment"].) Defendants therefore met their burden to show that Pelayo could not establish he was subjected to unwelcome harassment based on a protected characteristic.

## V. The Trial Court Properly Granted Summary Adjudication of Pelayo's Whistleblower Claims

### A. Labor Code sections 98.6, 6310, and 6400 (Fifth Cause of Action)

Pelayo's complaint also alleges claims for violations of Labor Code sections 98.6 and 6310. Both statutes prohibit employers from retaliating against employees who file complaints or disclose information to authorities about unsafe working conditions. (*St. Myers v. Dignity Health* (2019) 44 Cal.App.5th 301, 307.) Pelayo does not dispute that the *McDonnell Douglas* framework applies to these claims. (See *Veto v. Boeing Company* (C.D.Cal., Oct. 23, 2024, No. 8:24-cv-00509-DOC-KESx) 2024 WL 5036760, p. *4 [Lab. Code, § 6310]; *Cervantes v. Concentra Health Services, Inc.* (C.D.Cal., Dec. 21, 2021, No. 2:21-cv-02502-SB (AGRx)) 2021 WL 6496829, p. *10 [Lab. Code, § 98.6].) These claims were thus properly subject to summary adjudication for the same reasons as the FEHA retaliation claims. Even assuming Pelayo could establish a prima facie case of a violation of Labor Code sections 98.6 or 6310, defendants produced evidence of legitimate, nonretaliatory reasons for the adverse actions he suffered and Pelayo has failed to raise any inference of pretext.

Pelayo's fifth cause of action also alleges Star Fisheries violated Labor Code section 6400. Labor Code section 6400 requires employers to provide safe workplaces and authorizes the

19

Division of Occupational Safety and Health to issue citations to certain employers if there is evidence an employee was exposed to a hazard. (*Id*., subds. (a), (b).) Pelayo's complaint does not plead that Star Fisheries created or was otherwise responsible for exposing Pelayo to a workplace hazard in violation of the statute. Rather, his complaint relies on Labor Code section 6400, in conjunction with sections 98.6 and 6310, to support his claim that defendants unlawfully retaliated against him for expressing safety concerns. Even assuming Labor Code section 6400 can form the basis for a private right of action for retaliation, Pelayo's claim fails for the same reasons as his claims under sections 98.6 and 6310.[5] (See *Elzeftawy v. Michael Baker International, Inc.* (C.D.Cal., June 15, 2020, No. SA CV 19-1001 PA (KSx)) 2020 WL 5802410, p. *7 & fn. 2.)

---

[5] Relying on *Reeves v. Safeway Stores, Inc.* (2004) 121 Cal.App.4th 95, Pelayo argues that as to his fifth cause of action, and also as to his seventh cause of action for intentional infliction of emotional distress, defendants improperly cite Pelayo's deposition testimony as constituting material facts instead of " 'only as evidence of a material fact.' " We disagree. In *Reeves*, the defendant cited as an undisputed material fact a witness's testimony about admissions the plaintiff made to him, which the plaintiff contradicted in a declaration. (*Id*. at pp. 104–106.) Here, defendants rely on uncontroverted admissions Pelayo made during his deposition about the underlying conduct alleged in his complaint. Defendants could properly rely on his testimony to meet their burden. (*Sweeting, supra*, 221 Cal.App.4th at p. 514, fn. 8; cf. *Petitpas v. Ford Motor Co.* (2017) 13 Cal.App.5th 261, 271 [plaintiff's deposition testimony that car parts containing asbestos were not from defendant sufficient to meet defendant's burden under *Aguilar* for products liability claim].)

20

## B. Labor Code section 1102.5 (Fifth Cause of Action)

Labor Code section 1102.5 is " 'California's general whistleblower statute.' " (*McVeigh v. Recology San Francisco* (2013) 213 Cal.App.4th 443, 468.) In relevant part, it protects employees from retaliation for reporting violations of the law to authorities. (Lab. Code, § 1102.5, subd. (b).)

To prove a violation of this section, plaintiffs must show by a preponderance of the evidence that retaliation was a contributing factor in the alleged adverse actions. (*Lawson v. PPG Architectural Finishes, Inc.* (2022) 12 Cal.5th 703, 713–714; Lab. Code, § 1102.6.) The employer then "bears 'the burden of proof to demonstrate by clear and convincing evidence' that the alleged adverse employment action would have occurred 'for legitimate, independent reasons' even if the employee had not engaged in protected whistleblowing activities." (*Lawson*, at p. 712, citing Lab. Code, § 1102.6.) The clear and convincing standard requires that a reasonable factfinder find it " 'highly probable' " that an employer would have taken the adverse action even absent the plaintiff's protected activity. (*Vatalaro v. County of Sacramento* (2022) 79 Cal.App.5th 367, 386 (*Vatalaro*).)

Assuming without deciding that Pelayo could establish a prima facie case, defendants produced evidence that would require a reasonable factfinder to find it highly probable Pelayo would have been reduced to part-time work and terminated for legitimate, independent reasons, even if Pelayo had not engaged in protected activity. Inman's declaration provided detailed, business-related reasons for reducing Pelayo's hours and subsequently terminating him in 2019. The CBA corroborated Inman's explanations. It is undisputed that Pelayo was one of

21

the least senior Class C drivers at the time of the challenged adverse actions.

Pelayo proffered no evidence raising a triable issue about defendants' asserted reasons for his reduction in hours or termination. The trial court properly granted summary adjudication of Pelayo's fifth cause of action under Labor Code section 1102.5. (*Vatalaro*, *supra*, 79 Cal.App.5th at pp. 384–386 [summary judgment warranted where undisputed evidence would require factfinder to find it highly probable adverse action would have occurred for legitimate, independent reasons even if employee had not complained, and plaintiff failed to raise any triable issue of material fact].)

## VI. Remaining Causes of Action

### A. Labor Code sections 226 and 1198.5 (Sixth Cause of Action)

Labor Code section 226, subdivision (a) requires that employers provide employees with an "accurate itemized statement" reflecting, among other things, gross and net wages, hours worked, deductions, and applicable hourly rates of pay. "[A] knowing and intentional failure by an employer to comply with subdivision (a)" entitles an employee to damages. (*Id*., subd. (e)(1).) "[A] 'knowing and intentional failure' does not include an isolated and unintentional payroll error due to a clerical or inadvertent mistake." (*Id*., subd. (e)(3).) Under Labor Code section 1198.5, employers must provide employees with access to their personnel records within 30 days of a written request. (*Id*., subds. (a), (b)(1).)

Pelayo's sixth cause of action states claims for "[v]iolation[s] of Labor Code §§ 226, 1198.5 – Wage statements." He alleges that in response to his requests, Star Fisheries failed

22

to provide "personnel records" or itemized statements accurately reflecting his hours worked and hourly rate and that he was harmed by "[d]efendants' intentional violation of Labor Code §§ 226 and 1198.5." His complaint seeks damages only under Labor Code section 226, subdivision (e) for the purported violations.

Pelayo does not argue that the trial court erred by summarily adjudicating this cause of action based on his Labor Code section 226 theory of liability. Indeed, Pelayo admitted at his deposition that Star Fisheries corrected the handful of errors he identified in his weekly wage statements, thereby fatally undermining his claim.

Pelayo's argument on appeal is instead limited to challenging the trial court's summary adjudication of this cause of action based on Labor Code section 1198.5. He contends defendants failed to meet their burden because they did not separately address Pelayo's allegations that defendants violated this statute. However, to the extent the complaint's sixth cause of action asserted a claim under Labor Code section 1198.5, it was based on the same conduct as the Labor Code section 226 claim. Pelayo's complaint alleges only that he sought records regarding his hours and pay; he does not allege that he sought personnel records related to other employment information. His complaint also does not seek penalties under Labor Code section 1198.5 for Star Fisheries' purported failure to produce personnel records.

Pelayo's complaint framed the issues on summary judgment that defendants were required to address. (*AARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064.) He cannot now defeat summary adjudication of the

23

sixth cause of action by relying on an unpled theory of liability. (*Munro v. Regents of University of California* (1989) 215 Cal.App.3d 977, 989 [defendants " ' "not required to refute liability on some theoretical possibility not included in the pleadings" ' "].)  Accordingly, because defendants satisfied their initial burden on the sixth cause of action as pled, summary adjudication was proper.

### B. Intentional infliction of emotional distress (Seventh Cause of Action)

To state a cause of action for intentional infliction of emotional distress, a plaintiff must show, in part, outrageous conduct by the employer and his severe or extreme emotional distress resulting from the conduct.  (*Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2005) 129 Cal.App.4th 1228, 1259.)  " 'Conduct, to be " 'outrageous' " must be so extreme as to exceed all bounds of that usually tolerated in a civilized society.' [Citation.]" (*Ibid.*)  "Severe emotional distress means ' "emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it." ' [Citations.]" (*Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 1004.)

Defendants produced evidence demonstrating Pelayo cannot establish that defendants engaged in any outrageous conduct.  The evidence, including Pelayo's testimony, shows only that Swain did not assign him longer routes as he requested, Pelayo believed Swain disliked him, and Inman reduced his hours and laid him off for business-related reasons.  Evidence of mere "personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged." (*Janken, supra*, 46 Cal.App.4th

24

at p. 80.) Defendants also produced evidence showing Pelayo could not establish that he suffered the requisite severe emotional distress. He denied experiencing any physical manifestations of emotional distress or seeking medical treatment as a result of the challenged actions. Summary adjudication of this cause of action was proper.

### C. Wrongful termination in violation of public policy and UCL violation (First and Eighth Causes of Action)

A cause of action for wrongful termination in violation of public policy is a common law tort permitting employees to sue employers for discharging them " 'in violation of a fundamental public policy embodied in a constitutional or statutory provision . . . .' " (*Prue v. Brady Co./San Diego, Inc.* (2015) 242 Cal.App.4th 1367, 1377.) Such causes of action must be " 'tethered to fundamental policies that are delineated in constitutional or statutory provisions.' [Citation.]" (*Ibid.*) Similarly, a UCL claim " ' "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable." (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180.) "Thus, when the underlying legal claim fails, so too will a derivative UCL claim." (*AMN Healthcare, Inc. v. Aya Healthcare Services, Inc.* (2018) 28 Cal.App.5th 923, 950.)

Pelayo's complaint generically alleged that Star Fisheries wrongfully terminated him in violation of "the Civil Code, Business and Professions Code, Government Code, Penal Code, Labor Code, Cal OSHA regulations, the California Constitution, and other criminal and common laws." However, the complaint's specific allegations asserted only that defendants' conduct

25

violated specific provisions of the FEHA and the Labor Code.  The UCL cause of action likewise refers to "illegal conduct" consisting only of defendants' alleged violations of the FEHA and the Labor Code.  Because Pelayo has failed to establish his prima facie case or raise a triable issue as to defendants' liability under either statute, summary adjudication of his derivative wrongful termination and UCL causes of action was proper.  (*Hodges v. Cedars-Sinai Medical Center* (2023) 91 Cal.App.5th 894, 915; *Javorsky v. Western Athletic Clubs, Inc.* (2015) 242 Cal.App.4th 1386, 1408.)

## DISPOSITION

The trial court's judgment is affirmed.  Defendants to recover their costs on appeal.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


ADAMS, J.


We concur:


EDMON, P. J.



EGERTON, J.


26